# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

## BILLINGS DIVISION

| | |
|---|---|
| **JODI C. PIERCE,** | **CV 11-105-BLG-RFC-CSO** |
| **Plaintiff,** | |
| **vs.** | <u>**FINDINGS AND RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**</u> |
| **MICHAEL J. ASTRUE, Commissioner of Social Security,** | |
| **Defendant.** | |

Plaintiff Jodi C. Pierce ("Pierce") initiated this action to obtain judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. §§ 401-433, 1381-1383(c). *Complt. (Court Doc. 4).* On November 16, 2011, Chief Judge Cebull referred this case to the undersigned for all pretrial proceedings. *Court Doc. 9.*

Now pending are the parties' cross-motions for summary

judgment. *Court Docs. 13* (Pierce's motion) and *19* (Commissioner's motion). For the reasons stated below, the Court recommends that Pierce's motion be denied, the Commissioner's motion be granted, and the decision denying DIB and SSI be affirmed.

## I. PROCEDURAL BACKGROUND

Pierce filed her DIB and SSI applications on November 10, 2008, alleging that she has been unable to work since May 1, 2008. *Tr. 201-14.* She alleged she has been unable to work due to bi-polar disorder and a left arm injury. *Tr. at 273.*

The Social Security Administration ("SSA") denied Pierce's applications initially and upon reconsideration. *Tr. at 144-53.* On March, 18, 2010, an Administrative Law Judge ("ALJ") held a hearing. *Tr. at 44-119.* On May 26, 2010, the ALJ issued a written decision denying Pierce's claims. *Tr. at 12-28.* On July 14, 2011, after the Appeals Council denied Pierce's request for review, the ALJ's decision became final for purposes of judicial review. *Tr. at 1-4*; 20 C.F.R. §§ 404.981, 416.1481 (2011). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

## II.   STANDARD OF REVIEW

This Court's review is limited.  The Court may set aside the Commissioner's decision only where the decision is not supported by substantial evidence or where the decision is based on legal error. *Ryan v. Commr. of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); 42 U.S.C. § 405(g).  "Substantial evidence is more than a mere scintilla, but less than a preponderance." *Id*. (citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n. 1 (9th Cir. 2005) (internal quotation marks omitted)). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. (internal quotation marks and citation omitted).

The Court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusion, and cannot affirm the ALJ "by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (internal quotation marks and citation omitted).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  "Where the evidence is

susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (internal citation omitted).

## III. <u>BURDEN OF PROOF</u>

A claimant is disabled for purposes of the Act if: (1) the claimant has a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months, and (2) the impairment or impairments are of such severity that, considering the claimant's age, education, and work experience, the claimant is not only unable to perform previous work, but the claimant cannot "engage in any other kind of substantial gainful work which exists in the national economy." *Schneider v. Commr. of Soc. Sec. Admin.*, 223 F.3d 968, 974 (9th Cir. 2000) (citing 42 U.S.C. § 1382c(a)(3)(A)-(B)).

In determining whether a claimant is disabled, the Commissioner follows a five-step sequential evaluation process. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1520(a)(4)(i)-(v).

1.    The claimant must first show that he or she is not currently engaged in substantial gainful activity. *Tackett*, 180 F.3d at 1098.

2.    If not so engaged, the claimant must next show that he or she has a severe impairment. *Id.*

3.    The claimant is conclusively presumed disabled if his or her impairments meet or medically equal one contained in the Listing of Impairments described in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (hereafter "Listing of Impairments"). *Id.* If the claimant's impairments do not meet or medically equal one listed in the regulations, the analysis proceeds to the fourth step.

4.    If the claimant is still able to perform his or her past relevant work, he or she is not disabled and the analysis ends here. *Id.* "If the claimant cannot do any work he or she did in the past, then the claimant's case cannot be resolved at [this step] and the evaluation proceeds to the fifth and final step." *Id.* at 1098-99.

5.    If the claimant is unable to perform his or her past relevant work due to a "severe impairment (or because [he or she does] not have any past relevant work)" the court will determine if the claimant is able to make an adjustment to perform other work, in light of his or her residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(g). If an adjustment to other work is possible then the claimant is not disabled. *Tackett*, 180 F.3d at 1099.

The claimant bears the burden of proof at steps one through four, but at the fifth step the Commissioner bears the burden of establishing that there is other work in significant numbers in the national economy that

the claimant can perform.  *Id.*  The Commissioner can meet this burden

via the testimony of a vocational expert or reference to the Medical-

Vocational Guidelines at 20 C.F.R. Pt. 404, Subpt. P, App. 2.  *Id.*  If the

Commissioner is unable to meet this burden then the claimant is

disabled and entitled to benefits.  *Id.*

## IV.  <u>THE ALJ's OPINION</u>

The ALJ followed the five-step sequential evaluation process in

considering Pierce's claims.  First, the ALJ found that Pierce had not

engaged in substantial gainful activity since her alleged onset date of

May 1, 2008.  *Tr. at 17.*

Second, the ALJ found that Pierce has the following severe

impairments: "Bipolar disorder; history of chemical dependence and

abuse; and history of a broken arm[.]"  *Id.*

Third, the ALJ found that Pierce does not have an impairment or

a combination of impairments that meets or medically equals any one

of the impairments in the Listing of Impairments.  *Tr. at 18-20.*

Fourth, the ALJ found that Pierce has the residual functional

capacity ("RFC") to:

perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) limited to occasional overhead reaching with left upper extremity, and no limitations on the right upper extremity. She can occasionally stoop, kneel, or crouch; but cannot crawl. She is able to climb ramps or stairs occasionally, but cannot climb ladders, ropes or scaffolds; with occasional gross and fine handling objects; she must avoid hazards such as open dangerous machinery and unprotected heights. She is limited to mental activities at the level of mild activities of daily living. Socially, the claimant is limited to jobs requiring no more than brief superficial contact with the public or one-on-one occasional contact with people; and is unable to work at jobs with high constant focus requirement through an 8-hour shift or high constant stress or elements. She is unable to do jobs requiring a lot of judgment or decision-making "on the fly" in new scenarios.

*Tr. at 20.*

The ALJ also found that Pierce is unable to perform her past relevant work as a cashier at a casino. *Tr. at 26.* He found that her past job required Pierce to interact with others more frequently than she is now able to because of her current RFC. *Id.*

Fifth, the ALJ found that Pierce could perform jobs that exist in significant numbers in the national economy in light of her age (34 years old at the time of her alleged onset date, which is defined as a younger individual), education (at least high school), work experience,

and RFC. *Tr. at 27-28.* Consequently, the ALJ found that Pierce was not disabled. *Tr. at 28.*

## V.    PARTIES' ARGUMENTS

Pierce argues that the ALJ erred in three principal ways: (1) by ignoring or failing to properly consider various portions of evidence favorable to Pierce's position; (2) by misstating and improperly discrediting Pierce's testimony; and (3) by failing to rely on the only hypothetical question posed to the vocational expert that included all of Pierce's limitations. *Brief in Support of Pltf's Mtn. for Summary Judgment (Court Doc. 14) at 6-23.*

Specifically, Pierce contends that the ALJ ignored or failed to properly consider:  (1) "the opinion of the treating health care provider, Timothy Dove, LCPC," *id. at 11*; (2) "the brain injury evidenced by the MRI of February 2, 2010 showing mild small vessel ischemic changes," *id. at 11, 22*; (3) the opinions of Laura Wetherelt, nurse practitioner, and other treating physicians, *id. at 11-12, 19-22*; and (4) Pierce's "inability to afford medical care by a psychologist or psychiatrist[,]" *id. at 14-17.*

Respecting the ALJ's credibility determination, Pierce argues that the ALJ erred in failing "to set forth any description of activities with such specificity as to allow the reviewing court to determine if such activities are inconsistent with [Pierce's] claim of disability." *Id. at 24-27.*

Finally, Pierce argues that review of the vocational expert's testimony shows that "[t]he only hypothetical which incorporated all limitations of the treating mental health care providers described by [Pierce] found these limitations would preclude full-time work." *Id. at 27-28.*

In response, the Commissioner first argues that the ALJ properly considered the evidence. The Commissioner argues: (1) the ALJ properly determined that neither LCPC Dove ("Dove") nor nurse practitioner Wetherelt ("Wetherelt") was an "acceptable medical source" under the Social Security regulations capable of rendering "medical opinions" as contemplated in the regulations, *Deft's Br. (Court Doc. 20) at 8-11*; (2) the ALJ "considered Mr. Dove's statements and gave germane reasons, supported by the record, for discounting those

statements[,]" *id. at 8*; (3) the ALJ was not required to give Wetherelt's opinions controlling weight because she "did not offer any statements about [Pierce's] restrictions or limitations[,]" *id. at 10*; (4) "[t]he ALJ expressly considered the February 2010 head MRI, which showed only 'small' vessel ischemic change, but was otherwise normal[,]" *id. at 11*; and (5) the ALJ did not err by not considering the Global Assessment of Functioning ("GAF") scores from Pierce's April 2008 hospitalization, *id.*

Second, the Commissioner argues that the ALJ properly found that Pierce's subjective complaints were not entirely credible. *Id. at 12-14.* The Commissioner argues that the ALJ: (1) properly found that "the objective medical evidence was inconsistent with the degree of symptomology and limitation that [Pierce] alleged[,]" *id. at 14*; (2) permissibly found that Pierce's false statements regarding her alcohol and drug use undermined her credibility, *id. at 15*; (3) properly evaluated Pierce's activities of daily living as inconsistent with her complaints, *id. at 15-17*; (4) noted that evidence of Pierce's symptom improvement detracted from her credibility, *id. at 17*; (5) properly found that Pierce's complaints lacked credibility based on her failure to

comply with treatment, *id. at 17-18*; and (6) properly noted that Pierce's "lack of treatment also undermined the credibility of her subjective complaints[,]" *id. at 18-19*.

Third, the Commissioner argues that the ALJ properly questioned the vocational expert. He argues that, although Pierce urges the Court to determine that the hypothetical question to the vocational expert failed to contain limitations assigned by Dove, such limitations need not be included in the hypothetical question because the ALJ properly discounted Dove's statements and thus was not required to include them in the question. *Id. at 20*.

Finally, the Commissioner argues that if the Court finds that the decision denying Pierce's claims is not supported by substantial evidence, the Court should remand for further administrative proceedings rather than reverse for an award of benefits. *Id. at 20-23*.

In reply, Pierce argues that: (1) the ALJ failed, under the appropriate standard, to properly discount the opinions of Dove and Laura Wetherelt, *Pierce's Reply Br. (Court Doc. 22) at 2-5*; (2) multiple other medical professionals made findings consistent with Dove's

findings respecting Pierce's mental limitations, *id. at 5-9*; and (3) the ALJ's finding respecting Pierce's credibility is not supported by substantial evidence in the record, *id. at 9-15*.

## VI.  DISCUSSION

The primary issues before the Court are whether substantial evidence supports the ALJ's decision, and whether the ALJ's decision is free of legal error.  The Court is not permitted to re-weigh the evidence.

For the reasons set forth below, and applying controlling Ninth Circuit authority, the Court finds that the Commissioner's decision is based on substantial evidence in the record, and is free of legal error. Therefore, the Court recommends that it be affirmed.

### A.  ALJ's Consideration of Evidence

In evaluating Pierce's claims, the ALJ was required to "make fairly detailed findings in support" of his decision "to permit courts to review those decisions intelligently."  *Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (citation omitted).  In doing so, an "ALJ does not need to discuss every piece of evidence" and "is not required to discuss evidence that is neither significant nor probative[.]" *Howard ex rel.*

*Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations and citations omitted).

Here, the ALJ issued a detailed 14-page decision. *Tr. at 15-28*. He meticulously reviewed, as discussed further below, his rationale for rejecting significant and probative evidence in his assessment of Pierce's medical records, credibility, and RFC. *Tr. at 17-26*. In his written decision, he also set forth the evidence – which the Court concludes is substantial – that informed and supported his conclusion with respect to Pierce's disability claim. *Id*. For these reasons, and after the Court's own review of the entire record, the Court finds unpersuasive Pierce's argument that the ALJ failed to properly consider evidence favorable to her claims for DIB and SSI. In short, the ALJ did not err.

With respect to Pierce's specific claims of error, the Court concludes that:

(1) the ALJ did not fail to properly consider the opinion of licensed counselor Dove, nurse practitioner Wetherelt, or any other treating medical provider. "[T]o reject the testimony of a medically acceptable

treating source, the ALJ must provide specific, legitimate reasons based on substantial evidence in the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted). Only those qualified specialists listed in 20 C.F.R. § 404.1513(a) are considered "acceptable medical sources," including licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists. Those individuals designated as "other sources" under 20 C.F.R. § 202.1513(d) include nurse practitioners, physicians' assistants, therapists, counselors, and clergy. The opinions of such "other sources" are not entitled to the same deference afforded "acceptable medical sources" and an "ALJ may discount testimony from these 'other sources' if the ALJ 'gives reasons germane to each witness for doing so.'" *Molina*, 674 F.3 at 1111 (citations omitted).

Here, under the regulations' plain language, neither Dove nor Wetherelt was an acceptable medical source. Thus, the ALJ could discount their opinions if he gave germane reasons for doing so. The Court concludes that he did.

Respecting Dove, who is not a physician or psychologist but rather

a counselor or therapist, the ALJ noted that he treated Pierce over a period of time extending into 2010. *Tr. at 21*. Dove saw Pierce at least twice a month, evaluated her progress quarterly, and prepared a mental impairment questionnaire at the request of Pierce's representative. The ALJ discounted Dove's opinion because: (1) he failed to provide a referral for Pierce for medical care or further treatment despite indications in his own records that she was not improving under his care, *id. at 25*; (2) his "extreme assessment" of Pierce's limitations lacked support in the medical records, *id.*; (3) his opinion was inconsistent with the opinion of the medical expert who reviewed the record and testified at the hearing, *id.*; and (4) the medical expert testified that the evidence of record did not support Dove's assessments of Pierce because Dove failed to support them with documentation demonstrating symptoms necessary to support his conclusions, *id.* In light of the evidence in the record as a whole, the Court concludes that these reasons for discounting Dove's opinions are germane.

Respecting nurse practitioner Wetherelt, the Court concludes that

the ALJ did not err.  Pierce argues that the ALJ improperly rejected the opinion of Wetherelt, "who confirmed [Pierce] alternated between insomnia and sleeping 12 to 18 hours a day[.]" *Court Doc. 14 at 12*.  The Court rejects this argument for three principal reasons.

First, Pierce has mischaracterized the evidence.  Wetherelt did not "confirm" that Pierce had insomnia alternating with long periods of sleep.  In noting that Pierce alternates between insomnia and sleeping 12 to 18 hours a day, Wetherelt was merely recording Pierce's own subjective complaint.  Wetherelt wrote:

> We did spend approximately 15 minutes in discussion of her bipolar disorder and her current symptoms.  She states that she has been going back and forth between sleeping 12-18 hours a day or not sleeping at all.  She is wondering if there is anything she can take in place of the Strattera that might actually help her with her ADD and OCD.

*Tr. at 508*.  With this note, Wetherelt merely recorded Pierce's subjective complaint.  She did not independently confirm its existence.

Second, in this Court's opinion, Pierce overstates the effect of Wetherelt's treatment records.  The records do not indicate a sustained severe loss of function that would render Pierce incapable of engaging in any substantial gainful activity.  Rather, they indicate only that

Pierce has certain conditions and limitations, the existence of which the ALJ expressly acknowledged. *Tr. at 17* (noting Pierce has severe impairments of bipolar disorder, history of chemical dependence and abuse, and history of a broken arm). This same conclusion applies with equal force to Pierce's argument that other medical care providers found that Pierce suffered from bipolar disorder. As noted, the ALJ expressly acknowledged Pierce's bipolar condition. However, "[t]he mere existence of [ ] impairment[s] is insufficient proof of a disability." *Matthews v. Shalala*, 10 F.3d 678, 680 (9th Cir. 1993).

Third, and perhaps most important, neither Wetherelt nor any acceptable medical source opined respecting restrictions or limitations on Pierce's functioning that would preclude her from performing substantial gainful activity on a sustained basis. Thus, Wetherelt and the acceptable medical sources who treated her essentially offered no opinions for the ALJ to discount. The ALJ did not err.

(2) the ALJ did not err, as Pierce alleges, by failing "to consider the brain injury evidenced by the MRI of February 2, 2010 showing mild small vessel ischemic changes[.]" *Court Doc. 14 at 11, 22.* In his

written decision, the ALJ expressly discussed the subject MRI, but his evaluation was not limited to only the narrow statement to which Pierce has pointed. Rather, the ALJ wrote:

> The claimant then underwent an MRI of the head on February 2, 2010. Radiologist Douglas Bell, M.D. found no evidence of recent infarction; evidence consistent with mild chronic small vessel ischemic change; and did not rule out the possibility of some variety of demyelinating process. However, he found the intracranial contents otherwise normal; with major vessels appearing grossly patent, without obvious aneurysm.

*Tr. at 23.* In light of this portion of the ALJ's decision, Pierce's argument that the ALJ failed to consider the brain injury evidenced in the MRI is unpersuasive.

(3) the ALJ did not err, as Pierce argues, when he "based his decision denying [Pierce's] credibility upon her inability to afford medical care." *Court Doc. 14 at 8.* First, as is clear from the discussion below respecting the ALJ's assessment of Pierce's credibility, the ALJ's credibility determination was not based on Pierce's inability to afford medical care.

Second, the Court is not persuaded by Pierce's argument that the ALJ did not properly consider Pierce's inability to afford medical care

by a psychologist or psychiatrist as a reason for her failure to comply with medical treatment. It is quite obvious from the record and the ALJ's written opinion that he was well-aware of Pierce's financial status relative to the medical care she was receiving during the pendency of her claims. The medical records are replete with descriptions of the medications Pierce has taken over the years as well as her treatment at the Eastern Montana Community Mental Health Center and other public medical care facilities. See, e.g, Tr. at 321-22 (record of prescriptions), 335-49, 556-608 (records from EMCMHC and Montana Chemical Dependency Center). Also, the record contains several references to care Pierce received at such facilities as the Billings Clinic Hospital (Tr. at 350-57) and Billings Clinic's facility in Miles City, Montana (Tr. at 358-72). With all of this evidence indicating that Pierce had access to care and medications, it would not be necessary for the ALJ to discuss in detail her inability to obtain treatment because of indigence as a reason for her failure to comply with prescribed treatment. Thus, the ALJ did not err.

## B.    ALJ's Assessment of Pierce's Credibility

Pierce argues that her medical records support her testimony.

She also claims that the ALJ's determination that her testimony lacks

credibility is not sufficiently specific.  Court Doc. 14 at 25.  The Court

disagrees and concludes that the ALJ did not err in assessing Pierce's

credibility

In *Molina*, the Ninth Circuit recently restated the long-standing

standard for assessing a claimant's credibility as follows:

> In assessing the credibility of a claimant's testimony
> regarding subjective pain or the intensity of symptoms, the
> ALJ engages in a two-step analysis.  First, the ALJ must
> determine whether there is objective medical evidence of an
> underlying impairment which could reasonably be expected
> to produce the pain or other symptoms alleged.  If the
> claimant has presented such evidence, and there is no
> evidence of malingering, then the ALJ must give specific,
> clear and convincing reasons in order to reject the claimant's
> testimony about the severity of the symptoms.  At the same
> time, the ALJ is not required to believe every allegation of
> disabling pain, or else disability benefits would be available
> for the asking, a result plainly contrary to 42 U.S.C. §
> 423(d)(5)(A).  In evaluating the claimant's testimony, the
> ALJ may use ordinary techniques of credibility evaluation.
> For instance, the ALJ may consider inconsistencies either in
> the claimant's testimony or between the testimony and the
> claimant's conduct, unexplained or inadequately explained
> failure to seek treatment or to follow a prescribed course of
> treatment, and whether the claimant engages in daily

activities inconsistent with the alleged symptoms. While a claimant need not vegetate in a dark room in order to be eligible for benefits, the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting. Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.

*Molina*, 674 F.3d at 1112-13 (citations and internal quotations omitted).

Here, the ALJ found objective medical evidence of underlying impairments that could reasonably be expected to produce the symptoms alleged. Also, the ALJ did not find that Pierce was malingering. Thus, to find that Pierce was not entirely credible, the ALJ had to give specific, clear, and convincing reasons. The Court concludes that he did.

First, the ALJ found Pierce credible to the extent that she alleged some limitation in her ability to perform work activity. *Tr. at 17*. He, therefore, reduced her RFC accordingly to accommodate those limitations. *Tr. at 20-23*. Thus, the ALJ did not entirely reject Pierce's allegations as she seems to suggest. Rather, the ALJ was careful to

parse out those allegations that he found credible from those that he found not credible, as he was required to do. And, the ALJ gave the following specific, clear, and convincing reasons for rejecting other portions of Pierce's allegations and making his credibility determination.

First, the ALJ found that Pierce's medical history over time is not necessarily consistent with her claim of disabling symptoms and limitations. He noted that none of her treating or examining physicians opined that she was unable to work or to return to work as a result of her alleged impairments. *Tr. at 24.* He added that the only exception to this was a statement in the May 20, 2008, treatment notes of Dr. William Anderson at Forsyth who wrote: "No evidence of disability ...." *Id.* (referencing *Tr. at 504*).

Second, the ALJ pointed to evidence of Pierce's failure to fully comply with a course of treatment for some of her conditions, a factor he could consider in assessing Pierce's credibility. *Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999). The ALJ noted that Dove, Pierce's regular mental health provider, wrote in his records that Pierce missed

or cancelled multiple appointments with him. *Tr. at 24.* The ALJ also noted that Pierce was instructed to attend AA meetings at least 3 or 4 times a week following her stay at the Montana Chemical Dependency Center for treatment of dependence on opiates. At her hearing, Pierce testified that she failed to attend AA meetings because she does not like being around people. The ALJ noted that this claim was inconsistent with Pierce's history of working in a casino for nine years. *Tr. at 21.*

Third, the ALJ determined that Pierce's activities of daily living were inconsistent with her claim of functional limitations so severe as to preclude all substantial gainful activity. He noted that she testified to her ability to "care for her own needs, cook, do laundry and light housekeeping chores and shop for groceries once a month, accompanied by her mother. She occasionally works in the yard of her mother's house ... [and] recently re-acquired her driver's license but does not presently drive." *Tr. at 19.* The ALJ also noted evidence in the record that Pierce sees her boyfriend about four times each week, is computer literate, has been pursuing on-line college courses through the

University of Phoenix and has either taken or completed courses in business, math, research, and critical thinking. She also enjoys reading mystery novels and watching television. *Id.* Contrary to Pierce's argument that the ALJ failed to set forth any description of activities with such specificity as to allow the reviewing court to determine if such activities are inconsistent with Pierce's claim of disability, the Court concludes that the ALJ properly described and considered Pierce's activities.

All of the foregoing observations, which the Court finds to be supported by the evidence of record, indicate that the ALJ properly applied ordinary credibility evaluation techniques in assessing Pierce's credibility. *Smolen v. Chater*, 80 F.3d 1273, 1283-84 (9th Cir. 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993)). As noted, the Court cannot substitute its own interpretation of the evidence for the ALJ's interpretation. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas*, 278 F.3d at 954 (citation omitted). The ALJ did not err.

### C.   ALJ's Assessment of Vocational Expert Testimony

Pierce argues that the ALJ erred in failing to adopt the vocational expert's answer to a hypothetical question which incorporated all of Pierce's limitations – an answer which stated that Pierce would be precluded from performing full-time work. *Court Doc. 14 at 27-28*.

As discussed in detail *supra*, the Court already has determined that the ALJ did not err in his assessment of Pierce's credibility with respect to her symptoms and limitations. Thus, the ALJ was not required to include in his hypothetical question to the vocational expert Pierce's own version of her symptoms and limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence."). Rather, the ALJ was free to consider the evidence as a whole in making his determination as to Pierce's limitations. The Court concludes that he did so, and thus he did not err.

## VII. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that the Commissioner's decision denying DIB and SSI be affirmed, Pierce's motion for summary judgment (*Court Doc. 13*) be DENIED, and the Commissioner's motion for summary judgment (*Court Doc. 19*) be GRANTED.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendations of the United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to these findings must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after receipt hereof, or objection is waived.

DATED this 19th day of June, 2012.

/s/ Carolyn S. Ostby
United States Magistrate Judge